## SHELLEY *v.* ST. CHARLES COUNTY.[1]

*(Circuit Court, E. D. Missouri.* October 5, 1883.)

1. CONSTITUTIONAL LAW—ARTICLE 14, § 11, OF THE CONSTITUTION OF MISSOURI —SWAMP-LAND ACTS OF 1869 AND 1870.

Where a statute authorized a county to improve swamp lands situated within its limits, upon being petitioned by a majority in interest of the owners of such lands to do so, and upon being shown by such owners that the improve-

ment is practicable and their declaring themselves willing to pay their just proportion of the expenses; and, provided that the benefit to the county should be estimated and be paid by the county, and that funds to pay the balance of the expenses should be raised by the county by issuing county bonds, and that funds to pay the bonds should be raised by taxes assessed exclusively on the lands benefited: *held,* that the statute was valid and did not authorize the county "to loan its credit to any company, association, or corporation" within the meaning of the provision of article 14, § 11, of the constitution of Missouri.

2. MUNICIPAL BONDS—PRESUMPTION IN FAVOR OF LEGALITY.
  *Semble,* that where the constitutionality of a law under which county bonds have been issued is doubtful, federal courts will, in advance of any consideration of the subject by the supreme court of the United States, resolve all doubts in favor of the validity of the act.

On Demurrer to Petition.

This is a suit brought to recover judgment upon bonds issued by the defendant under the provisions of certain statutes mentioned in the opinion, authorizing the county to issue such obligations to facilitate the reclamation of swamp lands, and to be known as "land improvement bonds."

*E. B. Sherzer,* for plaintiff.

*W. A. Alexander* and *Dyer, Lee & Ellis,* for defendant.

McCRARY, J. The demurrer raises the question of the constitutionality of the act of the general assembly of Missouri of March 3, 1869, as amended by that of March 14, 1870, under which the bonds sued on were issued. It is said that this legislation is in violation of the provision of article 14, § 11, of the constitution of 1865, which was in force when the acts above mentioned were passed, and which is as follows:

"The general assembly shall not authorize any county, city, or town to become a stockholder in, or to loan its credit to, any company, association, or corporation, unless two-thirds of the qualified voters of such county, city, or town, at a regular or special election to be held therein, shall assent thereto."

The act of 1869 provided for the reclamation and protection of swamp and overflowed land by means of drainage, diking, or otherwise. The expense of such improvement, it was provided, should be paid by an assessment upon the county at large, to the extent of the benefits accruing to the whole county by reason of the improvement; the amount to be so assessed to be determined by the county commissioners after investigation, and the remainder by an assessment against the individuals benefited thereby, in proportion to the number of acres reclaimed or improved for them respectively. The act of 1870 provided for the issue of bonds, in lieu of immediate taxation, as the mode of raising the funds necessary for paying the expense of such improvement; and, for the raising of funds to pay such bonds, principal and interest, by taxes assessed exclusively on the lands improved, benefited, or protected by such improvements, except such portion as may be deemed by the commissioners to be justly chargeable to the county at large, according to the provisions of said act of 1869, which portion the county is to pay out of money collected for general purposes.

An examination of these statutes shows that they do not attempt to authorize a county either to become a stockholder in, or to loan its credit to, any company, association, or corporation. The owners of the swamp lands to be reclaimed, and who join in a petition to the county authorities for the purpose of invoking action to that end, and agreeing to pay their just proportion of the expense, can scarcely be regarded as an "association," within the meaning of the constitutional provision above quoted. They are clearly not a body of which the county could by possibility become a stockholder. They are not incorporated, nor in any manner organized or associated together, so as to be capable of issuing stock. But it is said they constitute an association to which the county has attempted to loan its credit. Not so. The county has made no loan of credit to any one. It has issued its own bonds, agreeing to raise money for their liquidation by a levy of taxes upon certain property. The bonds do not constitute a loan of credit to any association of swamp owners. By the statute the county contracts for the improvement, paying therefor with the bonds. The county does not engage in a purely private enterprise, nor does it undertake to aid a corporation, company, or association in carrying forward such an enterprise. It is the common case of a statute authorizing the construction of drains or of levees in order to protect or relieve swamp, marshes, and other low lands, and for the payment of the expenses thereof by special assessments.

Such statutes are very generally held valid, sometimes upon the ground that such improvements are important to the public wealth, sometimes as a proper public regulation, and sometimes upon the ground that the general public are interested in reclaiming such lands for use, and thus adding to the value of the taxable property of the county or state. It is competent for the legislature to require the owners of property to be permitted to make the improvements, and to enact that, in case of their default, the county may do so at their expense, and charge the sum to the property benefited through a special assessment of taxes thereon; and there seems to be no reason to doubt that the legislature may provide for an apportionment of the expense between the county at large and the owners of the property especially benefited. The statutes under consideration here authorize the county authorities to determine what proportion of the expense shall be borne by the county at large, and what by the property reclaimed. The general principles by which we are guided in holding this legislation to be valid and constitutional, will be found set forth in Cooley, Tax'n, *c.* 20, under the head of "Taxation by Special Assessment." We are clearly of the opinion that the legislature of Missouri, in enacting the statutes in question, was acting within the principles there enunciated, and not attempting, in violation of the constitution, to authorize a loan of county credit to a corporation, company, or association.

It is proper to add that, if the question were doubtful, this court

would feel constrained, especially when dealing with it in advance of any consideration of the subject by the supreme court of the United States, to resolve all doubts in favor of the validity of the act in question. *Gilchrist* v. *Little Rock*, 1 Dill. 261.

Demurrer to petition overruled.